OPINION BY STEVENS, P.J.E.:
Appellant Timothy F. Lee appeals from the judgment of sentence entered in the Court of Common Pleas of Monroe County on April 27, 2017, following his expulsion from the State Intermediate Punishment (SIP) program. Following a careful review, we affirm.
The trial court aptly set forth the facts and procedural history herein as follows:
2. Appellant's Acceptance Into, Movement Through, and Expulsion from SIP
On March 25, 2015, [Appellant] pled guilty in both of the captioned cases and was referred for an SIP evaluation. After acceptance, he was formally sentenced *482 to SIP. Unfortunately, after spending substantial time in SIP, [Appellant] was expelled from the program. His movements through and expulsion from SIP may be summarized as follows:
[Appellant] successfully completed Phase One of the SIP program. During the evaluation period and while in Phase One, [Appellant] was housed in a State Correctional Institution (SCI).
On completion of Phase One, [Appellant] was transferred directly to Luzerne County Rehabilitation Center ("LCRC"), a privately operated inpatient drug and alcohol rehabilitation facility, for Phase Two of the program. [Appellant] spent 62 consecutive days in LCRC. (N.T., 6/16/2017, pp. 8-9).
[Appellant] was then transferred to Scranton Community Corrections Center (SCCC) for Phase Three. While there, [Appellant] relapsed. As a result, he was sent back to Phase Two on August 29, 2016.
In his second stint, [Appellant] completed 32 consecutive days in Phase Two. After completion, he was returned to Phase Three.
Unfortunately, on January 1, 2017, while still in Phase Three, [Appellant] relapsed again and overdosed on heroin. Subsequently, [Appellant] consumed narcotics and admitted his intent to adulterate a drug screen to hide the fact. As a result of the time it took to address the relapses, overdose, and [Appellant's] treatment needs, [Appellant] ran out of time in the SIP program. Specifically, it became impossible for [Appellant] to complete the program within the statutory time frame.
On February 7, 2017, the Department of Corrections (DOC) expelled [Appellant] from SIP for violation of program rules, lack of meaningful participation, and insufficient time to complete the program. (March 16, DOC Letter). On expulsion, [Appellant] was transported to a SCI. He remained there through issuance of the re-sentencing orders from which these appeals have been taken.
3. Re-Sentencing and the Time Credit Issue
Upon being notified of the expulsion, we scheduled a revocation and re-sentencing hearing in accordance with the SIP statute and applicable law. At the hearing, [Appellant] did not contest his expulsion. As a result, we entered orders revoking the SIP sentences. However, because issues were raised regarding time credit, a separate re-sentencing hearing was scheduled and the DOC was directed to provide a report of [Appellant's] progress through the program and the amount of time spent he spent in each phase. (Order dated 4/27/2017).
On April 27, 2017, the re-sentencing hearing was held, as scheduled. At the conclusion of the hearing, we re-sentenced [Appellant] to an aggregate period of incarceration of 42 to 84 months. (Orders dated April 27, 2017). We granted [Appellant] a time credit of 565 days representing all time he spent in prison on these cases, plus the time he spent in inpatient rehabilitation in Phase Two of the SIP program. We did not give Defendant credit for the additional 267 days he spent in the community in Phase Three, the stage of the program he was in when expelled. (N.T., 6/16/2017, pp. 8-14; Probation Re-Sentencing Recommendation Memo; Orders dated April 27, 2017).
Subsequently, [Appellant] sought and was granted leave to file post-sentence motions nunc pro tunc. In his motions, [Appellant] sought additional time credit.
*483 On June 16, 2017, a hearing on [Appellant's] motions was held. During the hearing, the time credit issue was discussed at length.
The Commonwealth took the position that [Appellant] should be given credit for only time actually spent in prison-the Monroe County Correctional Facility before being sent for his SIP evaluation and all time spent in SCIs thereafter-and not for any time spent in Phases Two and Three, the stages of the program that occurred in the community. The Commonwealth asked us to reduce the time credit we had previously given by subtracting the number of days [Appellant] spent in Phase Two.
[Appellant] did not present the testimony of a DOC representative. However, [Appellant] testified about his time in Phase Three. [Appellant's] attorney argued that [Appellant] should retain the credit we had already given him, but asked us to increase the total time credit by adding the number of days [Appellant] spent in Phase Three. According to counsel, [Appellant] is entitled to credit for time spent in Phase Three because LCRC and the other Community Corrections Centers in which [Appellant] was housed were sufficiently restrictive, [Appellant] was at all times subject to escape charges if he walked away, and sound policy considerations dictate that full credit be awarded.
At the conclusion of the hearing, we entered orders denying [Appellant's] motions. We summarized on the record the reasons why we declined the requests of both parties and denied [Appellant's] motions. As indicated, in articulating our rationale, we referenced and incorporated the Frantzke/McDevitt opinion. (N.T., 6/16/2017, pp. 8-15, 22-27; Orders dated June 16, 2017). We incorporate our on-record reasoning into this opinion by reference.
Subsequently, [Appellant] filed the instant Appeal.
Trial Court Opinion, filed 8/28/17, at 2-5.
The trial court denied Appellant's post-sentence motions in its Order entered on June 16, 2017, and advised Appellant that he had thirty days in which to file an appeal with this Court. On June 30, 2017, Appellant filed a timely appeal, and on July 21, 2017, he filed his concise statement of matters complained of on appeal.
In his brief, Appellant presents a single question for this Court's review:
Did the trial court err and abuse its discretion by not giving [Appellant] time credit at resentencing for time spent in Phase 3 of the [SIP] Program?
Brief for Appellant at 7 (unnecessary capitalization omitted).[1]
Appellant frames his claim as a challenge to the discretionary aspects of his sentence, as is evident by his inclusion of a "2119(f) Statement-Reasons Supporting Appeal," See Brief for Appellant at 11.[2] However, this Court has held that a claim based upon a trial court's failure to give full credit for time served is a challenge implicating the legality of one's sentence.
*484 Commonwealth v. Dixon , 161 A.3d 949, 951 (Pa.Super. 2017). Our scope and standard of review when determining the legality of a sentence are well-established:
If no statutory authorization exists for a particular sentence, that sentence is illegal and subject to correction. An illegal sentence must be vacated. In evaluating a trial court's application of a statute, our standard of review is plenary and is limited to determining whether the trial court committed an error of law.
Id. (citing Commonwealth v. Leverette , 911 A.2d 998, 1001-02 (Pa.Super. 2006) ).
Appellant alleges he was entitled to credit for the distinct period of 267 days he spent in Phase 3 community correction center of the SIP program.[3] In doing so, Appellant maintains it is significant that one who leaves a Phase 3 correction center or returns only a few minutes late without authority can be charged with felony escape and that the freedom of participants in the program is restricted to the halfway house unless they are in the community at an approved work or program-related activity. He stresses that "[h]e was in Commonwealth owned and controlled housing at the direction of the Department of Corrections and the specific orders of individuals hired by the Commonwealth to implement a program through the Department of Corrections." Brief for Appellant at 10, 14-15. Therefore, Appellant contends the trial court erred in failing to give him credit for time served in Phase 3 of the SIP program, as his situation is analogous to other cases that involved county intermediate punishment programs wherein individuals were placed but allowed into the community for specified, program related functions. Id. at 10.
Section 9760 of the Sentencing Code governs credit for time served and provides, in pertinent part:
*485 (1) Credit against the maximum term and any minimum term shall be given to the defendant for all time spent in custody as a result of the criminal charge for which a prison sentence is imposed or as a result of the conduct on which such a charge is based. Credit shall include credit for time spent in custody prior to trial, during trial, pending sentence, and pending the resolution of an appeal.
42 Pa.C.S.A. § 9760(1) (emphasis added); see also 42 Pa.C.S.A. § 9773(b) (providing that upon revocation of county intermediate punishment sentence, sentencing court shall consider time served in county intermediate punishment program). In Commonwealth v. Fowler , 930 A.2d 586 (Pa.Super. 2007), appeal denied , 596 Pa. 715, 944 A.2d 756 (2008), this Court reiterated:
The easiest application of [ Section 9760(1) ] is when an individual is held in prison pending trial, or pending appeal, and faces a sentence of incarceration: in such a case, credit clearly would be awarded. However, the statute provides little explicit guidance in resolving the issue before us now, where [the defendant] spent time [somewhere other] than in prison. This difficulty results in part from the fact that neither Section 9760, nor any other provision of the Sentencing Code, defines the phrase "time spent in custody." The difficulty is also a function of the fact that there are many forms of sentence, and many forms of pre-sentencing release, which involve restrictions far short of incarceration in a prison.
* * *
The plain and ordinary meaning of imprisonment is confinement in a correctional or similar rehabilitative institution [.] Courts have interpreted the word custody, as used in Section 9760, to mean time spent in an institutional setting such as, at a minimum, an inpatient alcohol treatment facility.
Id. at 595-596 (emphasis in original) (quotation marks and citations omitted).
The Fowler Court stressed that intermediate punishment is an alternative to total confinement and that the Pennsylvania Supreme Court concluded the Legislature intended imprisonment and intermediate punishment to be mutually exclusive and to be treated differently, noting:
the Legislature provides that nothing in this chapter shall be construed as creating an enforceable right in any person to participate in an intermediate punishment program in lieu of incarceration. 42 Pa.C.S.[A.] § 9812. Thus, the Legislature now clearly distinguishes between incarceration, i.e., imprisonment, and intermediate punishment.
Generally, it is within the trial court's discretion whether to credit time spent in an institutionalized rehabilitation and treatment program as time served "in custody." ...
Id. at 596 (citing Commonwealth v. Koskey , 571 Pa. 241, 247, n. 7, 812 A.2d 509, 514 n. 7 (2002) (some additional citations omitted).
In considering other forms of "custody," this Court generally has found a defendant is entitled to credit for time he or she served in a court-ordered inpatient rehabilitation program but not for time spent in voluntary inpatient alcohol treatment. See Commonwealth v. Toland , 995 A.2d 1242 (Pa.Super. 2010), appeal denied , 612 Pa. 691, 29 A.3d 797 (2011). Moreover, in Commonwealth v. Tout-Puissant , 823 A.2d 186 (Pa.Super. 2003), a panel of this Court determined that the defendant was entitled to two weeks' credit against his intermediate punishment sentence for time served in an "Outmate Program," in which the defendant completed community service *486 projects while under 24-hour supervision. Therein, the appellant included in his reproduced record a copy of a document detailing the numerous requirements of the Outmate Program, and the Commonwealth did not dispute the terms of the Program. Id. at 190.
In contrast, when a defendant voluntarily admits himself into an inpatient rehabilitation center, the decision whether to credit him for time-served is within the discretion of the trial court. See Toland , supra ; see also Commonwealth v. Conahan , 527 Pa. 199, 589 A.2d 1107 (1991) (finding sentencing court did not abuse its discretion in giving defendant credit for time-served in an inpatient, institutional rehabilitation center). Also, in Commonwealth v. Maxwell , 932 A.2d 941 (Pa.Super. 2007), appeal denied , 596 Pa. 705, 940 A.2d 363 (2007), this Court precluded credit for electronic monitoring imposed as part of an intermediate punishment sentence.
At the reconsideration of sentence hearing held herein, it was clarified that the trial court credited Appellant for all time he had spent in state prison and in inpatient rehabilitation, but did not give him credit time for "anything after he was released from the inpatient rehab." N.T. Hearing, 6/16/17, at 8-9. The trial court heard argument from the Commonwealth and defense counsel, after which Appellant testified concerning the relevant phase of the SIP program.[4] Specifically, Appellant stated that:
[Appellant]: I just want to say as well as for as the halfway house is concerned, I was never home planned. I went to work in the morning, and I had to report back right after work and do my outpatient.
We had to be in by nine o'clock. If we were not in by 9:00 p.m., we had ten minutes after 9:00 p.m. to report. If not, we would have been charged with escape.
So any of the halfway houses in Scranton , you can gladly walk out , but there are consequences behind that. You can't just walk out and come back in. You need to sign out-with your state ID number-counted as an inmate. So I could not just come and go as I please.
* * *
You needed to get a home-you needed to get an approved home plan, which I did not have at that time because I had no family in PA at the time, except my kids and my kids' mother. So I was waiting to max out to move back to New York.
Id. at 16-18 (emphasis added).
After hearing counsels' argument and Appellant's testimony, the trial court ultimately stated the reasons for its ruling on the record as follows:
Putting all this on the record and some of my stream of consciousness is to say simply this: My assessment of this is that the determination as to whether to give time credit beyond jail time is discretionary with the Court.
In this case and in several other cases, I have given time for the inpatient rehab time, which I did in this case, both stints, if you will, and that's because to me going to rehab directly from prison, being in there 24 hours a day, and, you know, getting actual treatment and not physically being in the community is *487 sufficiently custodial to permit time credit as opposed to entitle [Appellant] to time credit.
And when there is time in the community and someone has violated the terms, especially if they had ridden the roller coaster up and down and having to go back to phase two and start again, I don't think in this case or others similar to it that credit for additional time out in the community, whether in a community correctional center or not, is something I want to award. As a factual basis here, I've heard nothing that would make me change my mind in this case.
I will reference-I don't have the docket numbers, but the two cases where I wrote a very long opinion, and I want to incorporate into the record here, are Commonwealth vs. Frantzke. I believe it's F-R-A-N-T-Z-K-E and McDevitt, again, I believe it's M-C-D-E-V-I-T-T. They were joined, and there is an appeal on this issue.
So I will incorporate my opinion into theirs. For those reasons I am going to say that I find [Appellant] is entitled to credit for the time he spent in jail, both Monroe County and State Correctional Institution.
And while not entitled to time for inpatient rehab, I find that I am going to exercise my discretion to do so because under the facts of this case it was sufficiently custodial to merit and warrant the time, plus he had successfully completed that part of the program.
With respect to the community time, whether in or not in the community correctional center, I will exercise my discretion not to give him any additional time. And among the reasons why are there has not been a sufficient factual record that would prompt me to exercise my discretion to do so.
Second, there were several relapses which I understand is part of recovery. But many times in this program there were relapses of people getting sent back to an earlier phase and they work through it and still work out and finish in time.
Finally, he did violate the rules and was revoked and expelled from the program. And also there has been nothing to indicate here that the community correctional center has the same custodial trappings, if you will, as the inpatient rehab. So for those reasons, I'm going to deny that aspect of the motion to reconsider.
N.T. Hearing, 6/16/17, at 25-27.
While all of Appellant's time spent in the Scranton Community Corrections Center was court-ordered, i.e., part of his SIP sentence, upon our review of the foregoing decisional authority, the limited certified record, and the trial court's opinion, we find the trial court did not commit an error of law in determining that Appellant is not entitled to credit for the days he spent in the Center. Although he testified he was required to report to the facility by nine o'clock each evening, he also admitted he was permitted to "gladly walk out," unaccompanied, to go to work each morning. See N.T., 6/16/17, at 16-17. Accordingly, we find Appellant's time spent at that facility to be more akin to the time served on electronic monitoring in Maxwell , supra , as opposed to the twenty-four hour supervised "Outmate Program" analyzed in Tout-Puissnat , supra . Therefore, the trial court correctly determined Appellant is not entitled to credit for the days he spent at the community correction center.
Judgment of sentence affirmed.

The Commonwealth failed to file a brief in this matter. In a letter dated January 23, 2018, the Deputy Prothonotary of this Court notified the Monroe County District Attorney's Office that parties who failed to meet filing deadlines would be precluded from presenting oral argument, and, in fact, the district attorney was not permitted to participate in oral argument held on February 28, 2018.

Pa.R.A.P. 2119(f) provides that "[a]n appellant who challenges the discretionary aspects of a sentence in a criminal matter shall set forth in his brief a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of a sentence." Pa.R.A.P. 2119(f).

61 Pa.C.S.A. § 4105. Entitled "Drug offender treatment program" defines each portion of the SIP program at issue herein as follows:
(a) Establishment. -The department shall establish and administer a drug offender treatment program as a State intermediate punishment. The program shall be designed to address the individually assessed drug and alcohol abuse and addiction needs of a participant and shall address other issues essential to the participant's successful reintegration into the community, including, but not limited to, educational and employment issues.
(b) Duration and components. -Notwithstanding any credit to which the defendant may be entitled under 42 Pa.C.S. § 9760 (relating to credit for time served), the duration of the drug offender treatment program shall be 24 months and shall include the following:
(1) A period in a State correctional institution of not less than seven months. This period shall include:
(i) The time during which the defendants are being evaluated by the department under section 4104(b) (relating to referral to State intermediate punishment program).
(ii) Following evaluation under subparagraph (i), not less than four months shall be in an institutional therapeutic community.
(2) A period of treatment in a community-based therapeutic community of at least two months.
(3) A period of at least six-months' treatment through an outpatient addiction treatment facility. During the outpatient addiction treatment period of the drug offender treatment program, the participant may be housed in a community corrections center or group home or placed in an approved transitional residence. The participant must comply with any conditions established by the department regardless of where the participant resides during the outpatient addiction treatment portion of the drug offender treatment program.
(4) A period of supervised reintegration into the community for the balance of the drug offender treatment program, during which the participant shall continue to be supervised by the department and comply with any conditions imposed by the department.
61 Pa.C.S.A. § 4105(a),(b).

The Commonwealth presented no witnesses, and the trial court expressed its dissatisfaction with the fact that no one from the probation department or elsewhere was present to testify and that neither party presented any documents to create a factual record. Id. at 11-15, 17.